[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY.
This appeal, considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, is not controlling authority except as provided in S.Ct.R.Rep.Op. 2(G)(1).
In two assignments of error, defendant-appellant Michael Murphy challenges the weight and sufficiency of his convictions for two counts of gambling, in violation of R.C. 2915.02(A)(1). We overrule both assignments of error and affirm the judgment of the trial court.
To reverse on the sufficiency of the evidence, this court must review the record in the light most favorable to the prosecution and be convinced that a rational trier of fact could not have concluded that the elements of the crime had been established beyond a reasonable doubt.[1]
To reverse on the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[2]
R.C. 2915.02(A)(1) prohibits, inter alia, "knowingly engag[ing] in conduct that facilitates bookmaking." We are convinced that sufficient evidence was presented to the trial court to support Murphy's convictions. The record reveals that a confidential informant contacted Murphy on separate occasions in order to place bets with a bookmaker named "Raymond," and that the informant went to the bar operated by Murphy to pay and collect on those bets.
In tape-recorded telephone conversations, Murphy gave the informant explicit instructions on the procedure for bet-placing with Raymond. Murphy even went so far as to establish the betting "lines" for Raymond, and indicated to the informant that those lines would be the ones that Raymond would have to accept.
At one point, when the informant went to Murphy's bar to receive a payoff of over $900, Murphy gave the informant $200 and told the informant that he would be able to soon pay the balance. Murphy indicated that, whether or not he was paid by the bookmaker, Murphy would make sure that the informant got the balance owed. The informant returned to the bar on a later date to collect the balance of over $700 from Murphy.
Murphy told the informant that he was going to put the informant in direct contact with Raymond, because it was becoming too difficult for Murphy to keep track of the betting "and then [Raymond's] looking around at me the first of the week for money, and I don't like to sit here and do that (sic) transactions in here." Murphy indicated that he did not want to settle the bets in the bar because he could not afford to put the bar's liquor license in jeopardy. Murphy said that the bookmaker would have to meet elsewhere, in order to keep the gambling away from the bar. Murphy also said that, if he were going to allow the betting transactions to go on in the bar, he might as well book himself. After he was arrested, Murphy admitted to the police that he liked to gamble and may have placed bets for people with various bookmakers.
We are convinced that sufficient evidence was presented to support convictions for gambling. Furthermore, we are not persuaded that the trial court lost its way by finding Murphy guilty of both counts. Accordingly, we overrule both assignments of error and affirm the judgment of the trial court.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Hildebrandt, P.J., Gorman and Winkler, JJ.
[1] See State v. Thompkins (1997), 78 Ohio St.3d 380, 386,678 N.E.2d 541, 546; State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus.
[2] See State v. Thompkins, supra, at 387, 678 N.E.2d at 546-547.